Stephen C. Ruehmann, Esq. (167533)
Robin D. Shofner, Esq. (272552)
**RUEHMANN LAW FIRM, P.C.**
9580 Oak Avenue Parkway, Suite 15
Folsom, CA 95630
Tel (916) 988-8001
Fax (916) 988-8002

Attorney for Plaintiff
ROSIE LUCIW

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| ROSIE LUCIW, | Case No.: 5:10-cv-5969-JF (HRL) |
| Plaintiff, | **PLAINTIFF'S SECOND AMENDED COMPLAINT FOR:** |
| vs. | |
| BANK OF AMERICA, N.A; BAC HOME LOANS SERVICING, LP; U.S. BANK, N.A. as Trustee, for the Certificateholders of Banc of America Funding Corporation, Mortgage Pass-Through Certificates, Series 2007-B; AND DOES 1-100, inclusive, | 1. **Negligence (Violation of Civil Code §§ 2923.5 and 2924)**<br>2. **Unfair Business Practices (Violation of Bus. & Prof. Code § 17200, *et seq.*)** |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

**COMES NOW** Plaintiff Rosie Luciw ("Plaintiff") who avers the following:

## JURISDICTION

1.    This Court has jurisdiction over the subject matter of this complaint under 28 U.S.C. §§ 1441(b) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

2.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

///

**VENUE**

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the property that is the subject of this case is located in Santa Clara County, California.

**PARTIES**

4.     At all relevant times, Plaintiff was an adult resident of Santa Clara County, California.  Plaintiff is the sole owner of certain real property located at 4045 Hidden Valley Lane, San Jose, California 95127 (the "Subject Property").  The Subject Property is a single-family residence.

5.     At all times mentioned herein, Defendant BANK OF AMERCIA, N.A. ("BOA") was and is a National Association, doing business in Santa Clara County, California, with a main business address of 100 North Tryon Street, Charlotte, North Carolina, 28255.  BOA was the original lender for Plaintiff's loan.

6.     At all times mentioned herein, Defendant BAC HOME LOANS SERVICING, LP ("BAC") was and is a Texas limited partnership, doing business in Santa Clara County, California, with a main business address of 4500 Park Granada, Calabasas, California 91302.  BAC is the current servicer for Plaintiff's loan and a subsidiary of BOA.

7.     At all times mentioned herein, Defendant U.S. BANK, N.A. as Trustee, for the Certificateholders of Banc of America Funding Corporation, Mortgage Pass-Through Certificates, Series 2007-B ("U.S. BANK") was and is a National Association, doing business in Santa Clara County, California, with a main business address of 209 LaSalle Street, 3rd Floor, Chicago, Illinois 60604.  U.S. BANK is the current owner of Plaintiff's loan.  (A true and correct copy of the letter naming U.S. BANK as the owner of Plaintiff's loan is attached as **Exhibit 1**, and shall be incorporated by this reference as though fully set forth herein.)

8.     Plaintiff is ignorant of the true name and capacity of each Defendant sued herein as DOES 1 through 100, inclusive and therefore sues those Defendants by such fictitious names.  Plaintiff will seek leave to amend this complaint to include the true names and capacities of those Defendants when they have been ascertained.

9.     Plaintiff is informed, believes and thereon alleges that, at all times herein

mentioned, each Defendant sued herein in relation to the property they claim an interest in was the agent and/or employee of each of the remaining Defendants thereof and at all times was acting within the purpose and scope of such agency and/or employment.

10.     At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

11.     At all relevant times, Defendants have engaged in conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in this Complaint.

## **BACKGROUND FACTS**

12.     On or about January 12, 2007, Plaintiff applied for a refinance loan using the Subject Property as hereinabove described as collateral in a contract of mortgage with BOA as the lender.

13.     Plaintiff entered into a first Deed of Trust securing the sum of $680,000.00 based on a 30-year adjustable rate mortgage ("ARM") with an initial interest rate of 7.000% and an adjustable interest rate tied to the London Interbank Offered Rate ("LIBOR") plus 2.250% with BOA as the lender. The interest rate on the loan was set to adjust each year. (A true and correct copy of the Note and Deed of Trust are attached as **Exhibits 2** and **3**, respectively, and shall be incorporated by these references as though fully set forth herein.)

14.     The escrow was closed, and Plaintiff made mortgage payments and continued to do so until the combination of Plaintiff's lack of income and the adjustable interest on the loan caused Plaintiff to ultimately default on the loan in mid-2009. The consistent adjustable interest rate varied Plaintiff's monthly payments outrageously and in gross disproportion to her income without assessing her ability to pay.

15.     Plaintiff is informed, believes and thereon alleges that BOA had a well

established pattern and practice of deceiving potential borrowers solely to generate a large
volume of loans so as to maximize profits, in the form of revenues from the resale and
securitization of loans, or in the form of fees from servicing the loans.

16.     Plaintiffs further allege that Defendants do not have the right to cause the
foreclosure and non-judicial sale of the Subject Property owned by Plaintiff, for which a
Trustee's Sale is set to occur on November 4, 2010. Despite Plaintiff's willingness to negotiate
payment options in the face of the predatory lending practices of BOA, Plaintiff is informed,
believes and further alleges that on September 18, 2009, NDEx West, LLC ("NDEx") caused a
Notice of Default ("NOD") to be recorded against the Subject Property without the authority to
do so as neither BOA/BAC, U.S. BANK, nor anyone acting on their behalf contacted Plaintiff
either in person or by telephone to discuss her financial status and alternatives to foreclosure as is
required to be compliant with Civil Code § 2923.5. (A true and correct copy of the NOD is
attached as **Exhibit 4**, and shall be incorporated by this reference as though fully set forth
herein.)

17.     Plaintiff was available at all times to discuss her financial status and alternatives
to foreclosure but received no communications from BOA/BAC or U.S. BANK. Plaintiff also
never received a certified letter from BOA/BAC or U.S. BANK stating that they were attempting
to contact her to discuss her financial status and alternatives to foreclosure.

18.     NDEx recorded a Notice of Trustee's Sale ("NOS") against the Subject Property
on January 20, 2010. (A true and correct copy of the January 20, 2010 NOS is attached as
**Exhibit 5**, and shall be incorporated by this reference as though fully set forth herein.) The NOS
stated that the sale was scheduled for February 9, 2010. (See *Ibid*.) Again, because the NOS
was filed by NDEx who had not properly been substituted as trustee, the NOS and entire
foreclosure are void.

19.     Since that time, NDEx recorded a second NOS against the Subject Property on
October 13, 2010. (A true and correct copy of the October 13, 2010 NOS is attached as **Exhibit
6**, and shall be incorporated by this reference as though fully set forth herein.)

20.     This action concerns Defendants' unlawful, fraudulent and unfair business acts or

practices.  Defendants engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of high-risk loan in order to maximize Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to lose their homes through foreclosure.  To add insult to injury, Defendants U.S. BANK and BAC are now proceeding with foreclosure on the Subject Property without meeting the requirements of California law.

**FIRST CAUSE OF ACTION**
**Negligence (Violation of Civ. Code §§ 2923.5 & 2924)**
**Against BOA, BAC, U.S. BANK, DOES 1-100**

21.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as though fully set forth herein.

22.    Plaintiff alleges that at all times mentioned herein the Subject Property was listed as her primary residence on her loan application and that Plaintiff is a member of the class of persons protected under Civil Code §§ 2923.5 and 2924.  (A true and correct copy of Plaintiff's loan application is attached as **Exhibit 7**, and shall be incorporated by this reference as though fully set forth herein.)  As such, the residence is considered her owner-occupied residence pursuant to Civil Code § 2924(i) which states that "'owner-occupied' means that the residence is the principal residence of the borrower **as indicated to the lender in loan documents**." [emphasis in original.]

23.    Civil Code § 2923.5 creates a duty of care which requires a mortgagee, beneficiary or authorized agent to contact a borrower in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure at least 30 days prior to filing an NOD.  An NOD which is filed without complying with Civil Code § 2923.5 is null and void.  (See generally *Mabry v. Sup. Ct. (Aurora)* (2010) 185 Cal.App.4th 208.) Plaintiff further alleges that the declaration of compliance with Civil Code § 2923.5 executed by an unknown signor is false and fraudulent, and that the unknown signor does not have personal knowledge of the facts set forth therein.

24.    Plaintiff maintains that BOA/BAC and U.S. BANK failed to contact her either in

person or by telephone to assess her financial situation and explore options for her to avoid foreclosure at least 30 days prior to filing the NOD on September 18, 2009. (See **Exhibit 4**.)

25.     Plaintiff was available at all times to discuss her financial status and alternatives to foreclosure but received no communications from BOA/BAC or U.S. BANK. Plaintiff also never received a certified letter from BOA/BAC or U.S. BANK stating that they were attempting to contact her to discuss her financial status and alternatives to foreclosure. As a result, BOA/BAC and U.S. BANK have not met the due diligence requirements of 2923.5(g) either.

26.     Plaintiffs are informed, believe and further allege that NDEx filed an NOD on September 18, 2009 without the requirements of Civil Code § 2923.5 being met, thereby making the NOD void. (*Ibid.*)

27.     BOA/BAC and U.S. BANK's unlawful conduct caused Plaintiff's damages because she now stands to lose her property in a Trustee's Sale in the future, thus cutting short the time Plaintiff has to adequately litigate the wrongful and unlawful conduct of Defendants. Plaintiff has also been deprived of her statutory right to meet and confer with her lender regarding her financial situation and alternatives to foreclosure.

28.     As a direct and proximate result of Defendants' unlawful conduct described herein, Plaintiff has suffered damage to her consumer credit history and home mortgage creditworthiness with resulting financial loss, and she has suffered additional compensatory damages according to proof.

## SECOND CAUSE OF ACTION
**Violation of Bus. & Prof. Code § 17200, *et seq.* (Unfair Business Practices) Against All Defendants**

29.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as though fully set forth herein.

30.     Plaintiff alleges that the unlawful acts and practices of Defendants alleged above constitute unfair business acts and/or practices within the meaning of Business and Professions Code § 17200, *et seq.*

31.     Plaintiff alleges that by 1) failing to comply with the pre-NOD personal contact

requirements of § 2923.5, Defendants have committed one or more unfair business acts within the meaning of Business and Professions Code § 17200, *et seq*.

32.     Plaintiff alleges that Defendants' unlawful business acts and/or practices as alleged herein have violated numerous laws and regulations including Civil Code §§ 2923.5 and 2924. Said predicate acts are therefore per se violations of Business and Professions Code § 17200, *et seq*.

33.     Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors. Specifically, Defendants were able to initiate a foreclosure without complying with California foreclosure law. This enabled them to operate at a higher profit margin than lender and servicers who do comply with California foreclosure law and gave Defendants a competitive advantage as a result.

34.     Plaintiff alleges that the unlawful acts and practices, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by BOA, BAC, U.S. BANK, and DOES 1-100 as described herein. Plaintiff, like many borrowers, has been deceived by Defendants into believing that her foreclosure was being lawfully conducted and that Defendants had complied with California foreclosure law. In so deceiving borrowers, Defendants have potentially robbed them of their statutory rights and caused them to face the loss of their property unjustly. Plaintiff has no other remedy at law that will prevent Defendants' misconduct, as alleged herein, from occurring and/or recurring in the future.

35.     Plaintiff alleges that as a direct and proximate result of Defendants' unlawful conduct, as alleged herein, she has lost thousands of dollars of equity in her home. Plaintiff is a direct victim of Defendants' unlawful conduct, as herein alleged, has suffered injury in fact and has lost money as a result of Defendants' unfair competition.

36.     Plaintiff alleges that she is entitled to equitable relief, including restitution, disgorgement of all profits accruing to Defendants because of their unlawful and deceptive acts and practices, costs, declaratory relief, and an injunction pending resolution of this matter.

37.     As a direct and proximate result of the aforementioned acts, Defendants received monies and continue to hold monies expended by Plaintiff who purchased the loan as described

herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against all of the Defendants and each of them as follows:

1. That the foreclosure or attempted foreclosure of the Subject Property be immediately enjoined pending resolution of this matter on the merits or at least until Defendants BOA/BAC and/or U.S. BANK comply with Civil Code § 2923.5 and, if such informal efforts fail, after they issue a new NOD with the correct foreclosing trustee;

2. That the actions of all of the Defendants be determined to be unfair and deceptive business practices in violation of California Statutes and that this Court award all such relief to Plaintiff as she may be entitled, including injunctive relief;

3. For compensatory damages according to proof;

4. For an award of costs of suit incurred; and

5. For any other relief the Court may deem just and proper.

Dated: May 23, 2011                         RUEHMANN LAW FIRM, P.C.


                                            __/s/ Robin D. Shofner___
                                            Robin D. Shofner, Esq.
                                            Attorney for Plaintiff
                                            ROSIE LUCIW

# EXHIBIT 1

direct dial number:
(215) 575-7290

**Dilworth
Paxson** LLP

Adam L. Bliss
abliss@dilworthlaw.com

June 1, 2010


JUN 0 2 2010

BY: .......................

Law Offices of Marc A. Fisher
9580 Oak Avenue Parkway #15
Folsom, CA 95630
Attention: Marc A. Fisher, Esq.

Re:  Borrower: Rosie Luciw (the "Borrower")
     Property Address: 4045 Hidden Valley Lane, San Jose, CA 95127
     Loan Number(s): 870948855 (the "Loan")

**COPY**

Dear Mr. Fisher:

This firm represents BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. ("BAC Home Loans"), with regard to the Loan. We are writing in response to your correspondence dated March 5, 2010 (the "Letter"), which was sent to BAC Home Loans for response, wherein you request information regarding the Loan. Although couched as a "qualified written request," the information requested in the Letter goes well beyond that which is available through a qualified written request made under 12 U.S.C. §2605 ("QWR").

As you may be aware, a QWR is a written correspondence which includes a statement of specific reasons why the borrower believes that its account is in error and which provides sufficient detail to allow the servicer of the loan to review the borrower's account to determine whether there were errors made in connection with the account, and to either make appropriate corrections where errors were made or explain to the borrower why the servicer believes the account is accurate. A QWR is not a vehicle for a borrower to obtain confidential information concerning the lender's business practices, trade secrets or other proprietary information, nor can it be used to support a fishing expedition for documents that may support a claim or as a mechanism for seeking any other information which does not relate specifically to the borrower's loan. Your Letter seeks information which goes well beyond that which is available through a QWR, while failing to provide any of the necessary detail regarding any specific error(s) made by the servicer in connection with the Loan.

Although your Letter is overly broad, unduly burdensome and not in conformity with 12 U.S.C. §2605, BAC Home Loans reviewed its file documents in an attempt to obtain information responsive to those of your inquiries which were consistent with 12 U.S.C. §2605. We will address those of your inquiries which require a response in the same order as presented in the Letter as follows:

1.   Enclosed is a Payment History that lists the transactions relating to the Loan during BAC Home Loans' servicing. Please note this history provides pertinent information on payments received, tax and insurance payments disbursed, funds in the

Dilworth Paxson LLP                                                  Page 2

suspense/unapplied funds balance, and late charges assessed and paid.  There are no codes used in the Payment History that require specific definitions.  Please note the Payment History sets forth the application of payments per the terms of the Borrower's loan documents and may not represent the application of prepetition and postpetition payments pursuant to an applicable bankruptcy plan which may be in effect.  To date, fees that have been charged to the account and are not reflected in the enclosed Payment History are as follows:  attorney/trustee fee, $390.00; property inspection fees, $214.00; lock change fee, $60.00; mailing fees, $47.84; posting fees, $100.00; recording fees, $18.00; trip charges, $40.00; and title fees, $1,900.00.

2.   We have requested a reinstatement calculation, which will provide the breakdown of unpaid payments and which will be forwarded under separate cover.  The Loan is currently due for the March 2008 installment.  See also the response in paragraph 1 above.

3.   With respect to your demand for the original note, you cite no authority that supports your claim that you are entitled to the information/documentation you request and we are not aware of the existence of any such authority.  Accordingly, we respectfully decline this request.  In lieu of allowing inspection of the original copy of the note, we have enclosed herewith a true and correct copy of the Adjustable Rate Note.  The current owner of the note is U.S. Bank National Association, as Trustee, for the Certificateholders of Banc of America Funding Corporation. Mortgage Pass-Through Certificates, Series 2007-B, which has an address of 7080 Samuel Morse Drive, Columbia, MD 21045.  The remainder of this request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

4.   This request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

5.   This request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

6.   See the enclosed note and the response in paragraph 3 above.  The remainder of this request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

7.   See the enclosed Payment History.  The remainder of this request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

8.   See the enclosed Payment History.  The remainder of this request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

9.   See the enclosed Payment History and the response in paragraph 1 above.

Dilworth Paxson LLP                                        Page 3

10.   True and correct copies of the Deed of Trust and Adjustable Rate Rider are enclosed.
      The remainder of this request is declined as it seeks documentation and information
      beyond that which is available through a "qualified written request" made under 12
      U.S.C. §2605.

11.   This request is declined as it seeks documentation and information beyond that which is
      available through a "qualified written request" made under 12 U.S.C. §2605.

12.   This request is declined as it seeks documentation and information beyond that which is
      available through a "qualified written request" made under 12 U.S.C. §2605.

13.   This request is declined as it seeks documentation and information beyond that which is
      available through a "qualified written request" made under 12 U.S.C. §2605.

14.   This request is declined as it seeks documentation and information beyond that which is
      available through a "qualified written request" made under 12 U.S.C. §2605.

15.   Your request is unclear, as it references "the Monthly Billing Statement" without
      identifying the month in question.  To the extent this question was directed toward the
      amounts that would generally comprise the payment amount due in any given Monthly
      Billing Statement, this may be comprised of one or more of the following: the monthly
      principal, interest and/or escrow payment, late charges and any applicable fees, and past
      due payments.  Increases in the total due in any given month may be attributable to a
      change in the interest rate, an increase in the required escrow, an assessment of fees or
      late charges, or the inclusion of a past due payment on the bill.

16.   See the enclosed Payment History.

17.   There is currently no monthly escrow payment required in connection with the Loan.

18.   Annual escrow statements are issued to customers as scheduled.  Copies of the issued
      statements are not retained; however, the information is available in electronic format for
      associates to discuss with BAC Home Loans' customers during customer service
      telephone or correspondence inquiries or when customers view their loan information on
      the website.

19.   This request is declined as it seeks documentation and information beyond that which is
      available through a "qualified written request" made under 12 U.S.C. §2605.

20.   This request is declined as it seeks documentation and information beyond that which is
      available through a "qualified written request" made under 12 U.S.C. §2605.

21.   This request is declined as it seeks documentation and information beyond that which is
      available through a "qualified written request" made under 12 U.S.C. §2605.

Dilworth Paxson LLP                                                    Page 4

22.     BAC Home Loans, with an address of 400 National Way, Simi Valley, CA 93065, is the servicer of the Loan. The remainder of this request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

23-33.  These requests are declined as they seek documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

34.     There are no codes used in the Payment History that require specific definitions.

35.     See the responses in paragraphs 17 and 18 above.

36.     This request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

37.     This request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

38.     See paragraph 1 above and the enclosed Payment History. The remainder of this request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

39.     Late charges are reported as interest paid effective with the 2008 tax year. Prior to the 2008 tax year, there was no interest paid or reported to the IRS relating to late charges assessed and paid to this account.

40.     See paragraph 1 above and the enclosed Payment History. As of the date of this correspondence, no lender secured insurance has been purchased in connection with the Loan. The remainder of this request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

41.     See the response in paragraph 40 above.

42.     See the enclosed Payment History and the responses in paragraphs 17 and 40 above. Please contact the Borrower for any additional information.

43.     This request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.


If you have further concerns or questions regarding this matter please contact BAC Home Loans' FREM Customer Escalation Team at (866) 200-9624.

Dilworth Paxson LLP                                    Page 5

In providing the above response. BAC Home Loans is not limiting or waiving any rights or remedies it may now or hereafter have, whether arising under your Loan documents, at law or in equity, all of which rights and remedies are expressly reserved.

Very truly yours,

Adam L. Bliss

Enclosures

# EXHIBIT 2

LOAN # 6111261225

# ADJUSTABLE RATE NOTE

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

JANUARY 12, 2007                    SAN JOSE                            CA
   [Date]                              [City]                            [State]
4045 HIDDEN VALLEY LANE, SAN JOSE, CA 95127
UNINCORPORATED AREA
                  [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $       680,000 00       (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  BANK OF AMERICA, N A


I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       7 000      %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note. Interest will be calculated on a       360 DAY  basis.

## 3. PAYMENTS

*[Please check box for interest-only payments.]*
[X] Beginning on the       FIRST       day of MARCH, 2007   and on the       FIRST
day of every month thereafter until the       FIRST       day of MARCH, 2017       , I will pay only the interest on the unpaid principal balance of the Note. Thereafter, I will pay principal and interest by making payments every month as provided below.

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the       FIRST       day of each month beginning on MARCH 01, 2007
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  FEBRUARY 01, 2037       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  BANK OF AMERICA, N A , P O BOX 17404, BALTIMORE, MD 21297-1404
or at a different place if required by the Note Holder

MULTISTATE ADJUSTABLE RATE NOTE – Single Family

Page 1 of 6

BS899N (0301)
MGN1 01/12/07  8:49 AM 6111261225                    VMP MORTGAGE FORMS - (800)521-7291



**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $      3,966 67      This amount
may change.

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate
that I must pay  The Note Holder will determine my new interest rate and the changed amount of my monthly
payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**
The interest rate I will pay may change on the  FIRST                day of  FEBRUARY, 2010
and on that day every    12TH       month thereafter. Each date on which my interest rate could change is called a
"Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is:
THE ONE-YEAR LONDON INTERBANK OFFERED RATE ("LIBOR") WHICH IS THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE-YEAR
U.S. DOLLAR-DENOMINATED DEPOSITS IN THE LONDON MARKET. AS PUBLISHED IN THE WALL STREET JOURNAL.  THE MOST RECENT
INDEX FIGURE AVAILABLE AS OF THE DATE 45 DAYS BEFORE EACH CHANGE DATE IS CALLED THE "CURRENT INDEX."


If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable
information  The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND
ONE-QUARTER                          percentage points (          2.250     %) to the Current Index.
The Note Holder will then round the result of this addition to the  ☐ Nearest  ☒ Next Highest  ☐ Next Lowest
ONE-EIGHTH OF ONE PERCENTAGE POINT                    (     0 125       %).
Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next
Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the
unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate
in substantially equal payments  The result of this calculation will be the new amount of my monthly payment.
☒ The "Interest-Only Period" is the period from the date of this Note through  FEBRUARY 01, 2017
For the Interest-Only Period, after calculating my new interest rate as provided above, the Note Holder will then
determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the
unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.
The "Amortization Period" is the period after the Interest-Only Period. For the Amortization Period, after
calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly
payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full
on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be
the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
*(Please check appropriate boxes; if no box is checked, there will be no maximum limit on
changes.)*
☐ (1)  There will be no maximum limit on interest rate changes.

☐ (2) The interest rate I am required to pay at the first Change Date will not be greater than _____ % or less than _____ %.

☐ (3) My interest rate will never be increased or decreased on any single Change Date by more than _____ percentage points ( _____ %) from the rate of interest I have been paying for the preceding period.

☒ (4) My interest rate will never be greater than 13 000 %, which is called the "Maximum Rate."

☐ (5) My interest rate will never be less than _____ %, which is called the "Minimum Rate."

☐ (6) My interest rate will never be less than the initial interest rate.

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than 9 000 % or less than 5 000 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding period.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT. I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENTS WITHOUT PAYING A PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE. THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER. THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THE NOTE. IF I MAKE A PARTIAL PREPAYMENT. THERE WILL BE NO CHANGES IN THE DUE DATE OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES. IF THE PARTIAL PREPAYMENT IS MADE DURING THE PERIOD WHEN MY MONTHLY PAYMENTS CONSIST ONLY OF INTEREST, THE AMOUNT OF THE MONTHLY PAYMENT WILL DECREASE FOR THE REMAINDER OF THE TERM WHEN MY PAYMENTS CONSIST ONLY OF INTEREST. IF THE PARTIAL PREPAYMENT IS MADE DURING THE PERIOD WHEN MY PAYMENTS CONSIST OF PRINCIPAL AND INTEREST. MY PARTIAL PREPAYMENT MAY REDUCE THE AMOUNT OF MY MONTHLY PAYMENTS AFTER THE FIRST CHANGE DATE FOLLOWING MY PARTIAL PREPAYMENT. HOWEVER. ANY REDUCTION DUE TO MY PARTIAL PREPAYMENT MAY BE OFFSET BY AN INTEREST RATE INCREASE.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Rosie Luciw_ _____ (Seal)
ROSIE LUCIW                                                    -Borrower

_____ (Seal)
                                                           -Borrower

_____ (Seal)
                                                           -Borrower

_____ (Seal)
                                                           -Borrower

_____ (Seal)
                                                           -Borrower

_____ (Seal)
                                                           -Borrower

_____ (Seal)
                                                           -Borrower

_____ (Seal)
                                                           -Borrower

*(Sign Original Only)*

LOAN # 6111261225

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this 12TH day of JANUARY, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to BANK OF AMERICA, N A

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 4045 HIDDEN VALLEY LANE, SAN JOSE, CA 95127

UNINCORPORATED AREA

(Property Address)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 7.000 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the FIRST day of FEBRUARY, 2010 , and on that day every 12TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an index. The "Index" is:

MULTISTATE ADJUSTABLE RATE RIDER − Single Family    MGNR 01/12/07 8:49 AM 6111261225
Page 1 of 6
BS899R (0402)       VMP Mortgage Solutions, Inc. (800)521−7291

THE ONE-YEAR LONDON INTERBANK OFFERED RATE ("LIBOR") WHICH IS THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE-YEAR U.S. DOLLAR-DENOMINATED DEPOSITS IN THE LONDON MARKET, AS PUBLISHED IN THE WALL STREET JOURNAL   THE MOST RECENT INDEX FIGURE AVAILABLE AS OF THE DATE 45 DAYS BEFORE EACH CHANGE DATE IS CALLED THE "CURRENT INDEX."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding   TWO AND ONE-QUARTER                                              percentage points (   2.250                %) to the Current Index. The Note Holder will then round the result of this addition to the ☐ Nearest  ☒ Next Highest ☐ Next Lowest ONE-EIGHTH OF ONE PERCENTAGE POINT              (      0.125        %) Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

☒ Interest-Only Period

The "Interest-only Period" is the period from the date of this Note through FEBRUARY 01, 2017. For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes
( **Please check appropriate boxes; if no box is checked, there will be no
maximum limit on changes .)**

☐ (1) There will be no maximum limit on interest rate changes.

☐ (2) The interest rate I am required to pay at the first Change Date will not be
greater than _____ % or less than _____ %.

☐ (3) My interest rate will never be increased or decreased on any single Change
Date by more than
percentage points ( _____ %) from the rate of interest I
have been paying for the preceding period.

☒ (4) My interest rate will never be greater than 13 000 _____ %, which is
called the "Maximum Rate."

☐ (5) My interest rate will never be less than _____ %, which is
called the "Minimum Rate."

☐ (6) My interest rate will never be less than the initial interest rate.

☒ (7) The interest rate I am required to pay at the first Change Date will not be
greater than       9 000       % or less than       5 000       %.
Thereafter, my interest rate will never be increased or decreased on any single
Change Date by more than   TWO
percentage points (       2 000       %)
from the rate of interest I have been paying for the preceding period.

(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the
amount of my new monthly payment beginning on the first monthly payment date after
the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest
rate and the amount of my monthly payment before the effective date of any change.
The notice will include information required by law to be given to me and also the title
and telephone number of a person who will answer any question I may have regarding
the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of the title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Rosie Luciw_ _____ (Seal)
ROSIE LUCIW                                              −Borrower

_____ (Seal)
                                                        −Borrower

_____ (Seal)
                                                        −Borrower

_____ (Seal)
                                                        −Borrower

_____ (Seal)
                                                        −Borrower

_____ (Seal)
                                                        −Borrower

_____ (Seal)
                                                        −Borrower

_____ (Seal)
                                                        −Borrower

BS899R (0402)              Page 6 of 6          MGNR 01/12/07 8:49 AM 6111261225

# EXHIBIT 3

ORTC 0612004 8476V

Recording Requested By:
BANK OF AMERICA

Return To:
LOAN # 6111261225
FLS-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL 32256

| DOCUMENT: 19273404 | | Pages: 23 |
|---|---|---|
| | Fees | 75.00 |
| | Taxes | |
| | Copies | |
| | AMT PAID | 75.00 |

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Old Republic Title Company

RDE # 010
1/23/2007
8:00 AM

───── [Space Above This Line For Recording Data] ─────

# DEED OF TRUST  LOAN #6111261225

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JANUARY 12, 2007 together with all Riders to this document.
(B) "Borrower" is ROSIE LUCIW

Borrower's address is 4040 HIDDEN VALLEY LANE, SAN JOSE, CA 95127

. Borrower is the trustor under this Security Instrument.
(C) "Lender" is BANK OF AMERICA, N.A.

Lender is a NATIONAL BANKING ASSOCIATION
organized and existing under the laws of THE UNITED STATES OF AMERICA

CALIFORNIA - Single Family
Page 1 of 15
BS6(CA) (0207)    VMP Mortgage Solutions (800)521-7291
CVCA 01/12/07 8:45 AM 6111261225

Lender's address is 2000 CLAYTON ROAD, BLDG. D2, CONCORD, CA 945200000

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is  PRLAP, INC.

(E) "Note" means the promissory note signed by Borrower and dated  JANUARY 12, 2007
The Note states that Borrower owes Lender SIX HUNDRED EIGHTY THOUSAND AND 00/100
                                                                                Dollars
(U.S. $      680,000.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than FEBRUARY 01, 2037
(F) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

[X] Adjustable Rate Rider   [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider  [ ] Other(s) [specify]
[ ] 1-4 Family Rider        [ ] Biweekly Payment Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of SANTA CLARA

      [Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]
"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

Parcel ID Number: 512-72-093          which currently has the address of
4045 HIDDEN VALLEY LANE                     [Street]
SAN JOSE               [City] , California 95127   [Zip Code]
("Property Address"):
UNINCORPORATED AREA

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

BS6(CA) (0207)          Page 3 of 15
   CVCA 01/12/07 8:46 AM 6111261225

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

ESS(CA)   (03071)
CVCA  01/12/07  8:49 AM  511 12E1225                Page 8 of 15

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   ROSIE LUCIW            -Borrower

_____          _____ (Seal)
                                                         -Borrower

_____ (Seal)   _____ (Seal)
                    -Borrower                            -Borrower

_____ (Seal)   _____ (Seal)
                    -Borrower                            -Borrower

_____ (Seal)   _____ (Seal)
                    -Borrower                            -Borrower

BSB(CA)   (0707)                   Page 14 of 15
     CVCA 01/12/07  8:45 AM  6111261225

State of California
County of  SANTA CLARA

}ss.

On  1-17-07

before me,  Gloria C. Villegas, Notary Public
personally appeared

Rosie Lucin

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

GLORIA C. VILLEGAS
COMM. #1404345
NOTARY PUBLIC-CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires March 15, 2007

BS6(CA)   (0207)
CVCA 01/12/07 8:49 AM 5111261225

Page 15 of 15

ORDER NO. : 0612004847-GV

## EXHIBIT A

The land referred to is situated in the unincorporated area of the County of Santa Clara, State of California, and is described as follows:

PARCEL ONE:

Beginning at a point on the Northwesterly line of the parcel of land conveyed by Manuel Vargas to John Vargas, by deed recorded in Book 741 of Official Records, page 446, Records of Santa Clara County, California, distant thereon North 26° 48' 30" East 330.66 feet from a stake set in the most Westerly corner thereof in the Northeasterly line of Fleming Avenue; thence along said Northwesterly line of the parcel of land so conveyed to John Vargas, North 26° 48' 30" East 125 feet to the most Westerly corner of that certain parcel of land conveyed by Fay M. McAllister et ux to Robert N. Berry et ux, by deed dated October 3, 1947 and recorded October 7, 1947 in Book 1513 of Official Records, page 331; thence along the Southerly line of said parcel of land so conveyed to Berry, Easterly 140 feet, more or less, to the center line of a 40 foot right of way hereinafter described; thence along the center line of said right of way and the Southwesterly prolongation thereof, South 26° 48' 30" West 185 feet; thence running in a direct line Northwesterly 120 feet, more or less, to the point of beginning and being a portion of the Pala Rancho and Pueblo Tract No. 1 and also a portion of Parcel "G" as shown upon the map entitled "Record of Survey of the Division of a portion of the lands of Vargas Bros., situated in the Pala Rancho and Pueblo Tract No. 1" which said Map is on file in the office of the Recorder of the County of Santa Clara, State of California in Book 9 of Maps, page 26.

PARCEL TWO:

A right of way, non-exclusive for road and utility purposes in general, over, on, across and under a strip of land 40 feet wide, the center line of which is described as follows: BEGINNING at an iron pipe in the Southwesterly line of Porter Lane, 30 feet wide, being also the Northwesterly line of the 8 acre tract of land conveyed by Manuel Vargas to John Vargas by deed dated September 27, 1935 and recorded September 27, 1935 in Book 741 of Official Records, page 446, and distant thereon South 35° 36' East 133.90 feet from the iron bar at the most Northerly corner thereof, and North 35° 36' West 133.90 feet from an iron bar at the most Easterly corner thereof; thence parallel with and equidistant from the Northwesterly and Southeasterly lines of said land of Vargas, South 26° 48' 30" West 965.64 feet.

PARCEL THREE:

An easement to and along the line of said herein described strip for the purpose of locating, constructing, repairing, maintaining, or relaying a pipe line, and for the purpose of doing any necessary or lawful acts in connection with the construction or maintenance of said pipe line; there is also granted the right of the use of sufficient land contiguous to said strip on the southwest thereof for the purpose of and as may be necessary and convenient for the purpose of excavation of and deposit of earth and necessary building material during the time of constructing said line, and any repair thereof in, over, along and under that certain strip of land described
as follows:

BEGINNING at a point in the Northeasterly line of Fleming Avenue (40 feet wide) at the intersection thereof with the Southeasterly line of the Altadena Tract; thence North 26° 48' 30" East along the said Southeasterly line of the Altadena Tract 330.66 feet to the westerly corner of land conveyed to William J. Sullivan et ux by deed recorded in Book 4495, page 220 Official Records, of Santa Clara County; thence South 67° 31' 10" East along the Southwesterly line of said Sullivan's land 10.03 feet; thence South 26° 48' 30" West 331.43 feet to the said Northeasterly line of Fleming Avenue; thence, along said line of Fleming Avenue, North 63° 07' West 10.00 feet to the point of beginning.

612-22-093
54001
SH/NV/KH
A612-22-x79

# EXHIBIT 4

20436943 1

Recording requested by:
LANDSAFE DEFAULT TITLE RO

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013


DFF20090182301574

DOCUMENT: 20436943


| | Pages 3 |
|---|---|
| Fees.. | 18 00 |
| Taxes | |
| Copies | |
| AMT PAID | 18.00 |

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Recording Service

RDE # 001
9/18/2009
12:18 PM

Space above this line for Recorder's use only

Trustee Sale No.: 20090182301574      Title Order No.: 09-8-404547X

IMPORTANT NOTICE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $79,307.34 as of 9/16/2009 and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

20436943 2

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20090182301574          Title Order No.: 09-8-404547A

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

BANK OF AMERICA, N.A.
c/o NDEX WEST, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** NDEX WEST, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 01/12/2007, executed by ROSIE LUCIW, as Trustor, to secure obligations in favor of BANK OF AMERICA, N.A., as Beneficiary Recorded on 01/23/2007 as Instrument No. 19273404 of official records in the Office of the Recorder of SANTA CLARA County, California, as more fully described on said Deed of Trust. including a Note(s)/ Unconditional Guaranty which had a principal amount of $680,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 3/1/2008 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.**

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 9/16/2009

NDEX WEST, LLC as Agent for Beneficiary

By: _____
**Cheryl L. Asher**

20436943 3

**Bank of America**

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville, NY 14068-9000

Rosie Luciw

Notice Date: September 02, 2009
Property Address: 4045 Hidden Valley Lan
San Jose CA 95127

### PRE-CALIFORNIA DECLARATION

I, WILLIAM BRADY,    A member of the Foreclosure review committe
of Bank of America Homeownership Retention Division declare on
behalf of Bank of America, under penalty of perjury, and under the
laws of the State of California, that Bank of America's business
records maintained in the ordinary course of business reflect the
following is true and correct:

Bank of America

X_____ has contacted the borrower to assess the borrower's
financial situation and explore options for the borrower
to avoid foreclosure,

_____ tried with due diligence to contact the borrower in accordance
with California Civil Code Section 2923.5, or

_____ verified that the borrower has surrendered the property.

_____ has evidence and reasonably believes that the borrower has
contracted with an organization, person, or entity whose
primary business is advising people who have decided to leave
their homes on how to extend the foreclosure process and to
avoid their contractual obligations to beneficiaries.

_____ has confirmed that the borrower(s) filed for bankruptcy and
the proceedings have not been finalized to wit, there is no
order on the court's docket closing or dismissing the
bankruptcy case.

_____ The provisions of California Civil Code 2923.5 do not
apply because:


5-3-09  Getzville  NY
---
Date, and Place

_____
Name of Signor

173-XC141

32-17-2208NSB 11-2006

# EXHIBIT 5

FEB-08-10 09:21 AM 58249L+ROCCHI 4082516051 P.02

4045 HIDDEN VALLEY

Recording requested by:
LANDSAFE TITLE OF CALIFORNIA, INC.

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

NTSP20090182301574

Trustee Sale No.: 20090152301574    Title Order No.: 09-8-404547A    FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 01/12/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NDEx WEST, LLC, as duly appointed Trustee under and pursuant to Deed of Trust Recorded on 01/23/2007 as Instrument No. 19273404 of official records in the office of the County Recorder of SANTA CLARA County, State of CALIFORNIA.

EXECUTED BY:    ROSIE LUCIW,
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:    02/09/2010    TIME OF SALE:    10:00 AM
PLACE OF SALE:    AT THE NORTH MARKET STREET ENTRANCE TO THE COUNTY COURTHOUSE AT 190 NORTH MARKET STREET, SAN JOSE, CA.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
    4045 HIDDEN VALLEY LANE, SAN JOSE, CALIFORNIA 95127
APN#:    612-22-093

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $794,999.53. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
NATIONWIDE POSTING & PUBLICATION, INC.
4050 PLAZA GOLDORADO CIRCLE, SUITE E
CAMERON PARK, CA 95682
530-672-3033
http://www.nationwideposting.com

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

NDEx West, L.L.C. as Authorized Agent

_____    Dated: 01/14/2010

NDSS_NoticeOfTrusteeSale rpt - Pub - 01/09/2009 - Ver-20    Page 1 of 1

# EXHIBIT 6

To
Robin

Recording requested by:
LANDSAFE TITLE OF CALIFORNIA, INC.
When Recorded Mail To:
NDEX West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852
APN: 612-22-093
Property Address:
4045 HIDDEN VALLEY LANE
SAN JOSE, CALIFORNIA 95127

NTSP20090182301574

Space above this line for Recorder's use only

| Trustee Sale No. : 20090182301574 | Title Order No.: 09-8-404547A | FHA/VA/PMI No.: |

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 01/12/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NDEX WEST, L.L.C. as duly appointed Trustee under and pursuant to Deed of Trust Recorded on 01/23/2007 as Instrument No. 19275404 of official records in the office of the County Recorder of SANTA CLARA County, State of CALIFORNIA.

EXECUTED BY:      ROSIE LUCIW.
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:      11/04/2010      TIME OF SALE:      10:00 AM
PLACE OF SALE:      AT THE ENTRANCE TO THE SUPERIOR COURTHOUSE, 190 N. MARKET ST., SAN JOSE, CA.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
      4045 HIDDEN VALLEY LANE, SAN JOSE, CALIFORNIA 95127
APN#:      612-22-093

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $829,834.41. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
PRIORITY POSTING & PUBLISHING, INC.
17501 IRVINE BLVD., SUITE ONE
TUSTIN, CA 92780
714-573-1965
www.priorityposting.com

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

NDEx West, L.L.C. as Trustee

Dated: 10/13/2010

**BankofAmerica**

Rosie Luciw

P.O Box 610813
San Jose            CA 95161

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville, NY 14068-9000

Property Address: 4045 Hidden Valley L
San Jose CA 95127

I, Rebecca Kuenzi, of Bank of America, declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

Bank of America has obtained from the Commissioner of Corporations a final order of exemption pursuant to California Civil Code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

AND

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 does not apply pursuant to Section 2923.52 (b).

October 22, 2009                                    Getzville, NY

Name of Signor _____
Position:       Team Manager

FC413 D01 RTV

OCT-15-10 02:59 PM 58?19L<ROCCHI 408~516051 P.03

## NOTICE OF SALE
### PURSUANT TO SECTION 2924.8 OF THE CIVIL CODE

Foreclosure process has begun on this property, which may affect your right to continue to live in this property. Twenty days or more after the date of this notice, this property may be sold at foreclosure. If you are renting this property, the new property owner may either give you a new lease or rental agreement or provide you with a 60-day eviction notice. However, other laws may prohibit an eviction in this circumstance or provide you with a longer notice before eviction. You may wish to contact a lawyer or your local legal aid or housing counseling agency to discuss any rights you may have.

出售公告
依据民法典第2924.8款

因为房产的赎回在此前已经开始，这可能会影响您在此继续居住的权利。从本通知起的二十天后，本房产可能会被出售。如果你是租房户，新的房主可能给你新的出租协议，或通知您在60天内搬家。但有些法律可能会禁止在此情况下的搬房，或可为您提供更长的搬家期限。您可能想联系律师，您当地的法律援助或房屋咨询机构讨论您的有关权利。

매매 통고
민법 제 2924.8 항에 의거

이 자산에 대한 차압절차가 시작되었으며, 그로 인해 귀하가 이 건물에서 계속해서 거주할 수 있는 권리에도 영향이 미칠 수 있습니다. 이 통고의 날짜로부터 20일 혹은 그 후에, 이 건물은 차압 매매될 수 있습니다. 만약 귀하가, 이 건물을 임차하고 있다면, 새로운 건물 주인은 귀하에게 새로운대차 계약을 허가나 또는 60일 이내 퇴거하라는 통고를 할 수 있습니다. 그러나, 다른 법률들은 이런 상황에서의 퇴거를 금지하거나 또는 귀하에게 퇴거하기 전까지 연장된 기간의 통고를 하도록 할 수도 있습니다. 귀하의 권리에 대한 상담을 받기 위해서는 변호사 또는 귀하가 있는 지역의 법률 무료 기관 혹은 주택 상담 기관에 연락할 수도 있습니다.

## ANUNCIO DE VENTA
### SEGÚN LA SECCIÓN 2924.8 DEL CÓDIGO CIVIL

El proceso de ejecución de hipoteca ha comenzado en esta propiedad, lo que puede afectar su derecho de vivir en esta propiedad. La propiedad puede ser vendida en ejecución de hipoteca veinte días o más después de la fecha de este aviso. Si usted está rentando esta propiedad, el nuevo dueño de la propiedad puede darle a usted un nuevo contrato de arrendamiento o alquiler o darle un aviso de desalojo de 60-días. Sin embargo, otras leyes tal vez puedan prohibir un desalojo en esta circunstancia o proveerle a usted un aviso de más tiempo para que desaloje la propiedad. Tal vez usted desee comunicarse con un abogado o su ayuda legal de la localidad o agencia de consejería de vivienda para hablar de cualquier derecho que usted tal vez tenga.

## PAUNAWA SA PAGBENTA
### BATAY SA SEKSYON 2924.8 NG NILAGDAANG SIBIL

Ang proseso ng pagreremate ay nagsimula na sa pag-aaring ito, na kung saan ay maaaring makaapekto sa inyong karapatan na manirahan sa pag-aaring nabanggit. Dalawampung araw o higit pa matapos ang petsang naisagawa ang paunawang ito, ang pag-aari ay maaari nang ibenta batay sa pagremata. Kung kayo ay nangungupahan sa pag-aaring ito, ang bagong may-ari ng pag-aari ng bagong kasunduan sa paghiram o pagbenta o bigyan kayo ng kasulatan na paunawa na makalipat sa loob ng 60-araw. Gayunpaman, maaaring ipagbawal ng ibang batas ang pagpapaalis sa pagkakataong ito o maaaring bigyan kayo ng mas mahabang panahon bago ang pagpapaalis. Minumungkahi kayong makipagbigay alam sa inyong abogado o lokal na tulong legal o ahensiya ng payong pabahay upang pag-usapan ang alinmang karapatan na kayo ay mayroon.

## THÔNG BÁO BÁN
### THEO ĐIỀU 2924.8 BỘ LUẬT DÂN SỰ

Việc tịch thu tài sản này có thể ảnh hưởng đến quyền tiếp tục sinh sống của bạn tại đây. Bắt đầu từ hai mươi ngày tới đi sau ngày niêm yết, tài sản này có thể bị tịch thu để trả nợ. Nếu bạn đang mướn nhà tại đây, chủ tài sản mới sẽ gửi cho bạn tờ giấy mới về việc thuê hoặc mướn, hoặc có thể sẽ gửi cho bạn thông báo rời khỏi nhà trong vòng 60 ngày. Tuy nhiên, một số luật khác có thể không cho việc yêu cầu bạn rời khỏi nhà trong trường hợp này mà gửi cho bạn thông báo sớm hơn trước khi yêu cầu bạn rời đi. Bạn nên liên hệ với luật sư hoặc tổ chức giúp đỡ luật địa phương hoặc cơ sở tư vấn nhà để tham khảo những quyền bạn có.

# EXHIBIT 7

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _Rose Luciw_

Co-Borrower

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | [ ] VA | [X] Conventional | [ ] Other (explain): | Agency Case Number | Lender Case Number 6111261225 |
| | [ ] FHA | [ ] USDA/Rural Housing Service | | | |

| Amount $ 680,000.00 | Interest Rate 7.000 % | No. of Months 360 | Amortization Type: | [ ] Fixed Rate | [ ] Other (explain): |
| | | | | [X] GPM | [X] ARM (type): 3/1 INT ONLY NON CONF |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 4045 HIDDEN VALLEY LANE, SAN JOSE, CA 95127 | | No. of Units 1 |

Legal Description of Subject Property (attach description if necessary) COUNTY: SANTA CLARA

:S12-22-090 | Year Built

| Purpose of Loan | [ ] Purchase | [ ] Construction | [ ] Other (explain): | Property will be: |
| | [X] Refinance | [ ] Construction-Permanent | | [X] Primary Residence [ ] Secondary Residence [ ] Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired 1999 | Original Cost $ 570,000.00 | Amount Existing Liens $ 530,000.00 | Purpose of Refinance REDUCE INTEREST RATE | Describe Improvements [ ] made [ ] to be made Cost $ .00 |

| Title will be held in what Name(s) ROSIE LUCIW | Manner in which Title will be held INDIVIDUAL TENANCY | Estate will be held in: [X] Fee Simple [ ] Leasehold (show expiration date) |

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) LOAN PROCEEDS

### III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
| Borrower's Name (include Jr. or Sr. if applicable) ROSIE LUCIW | Country of Citizenship | Co-Borrower's Name (include Jr. or Sr. if applicable) | Country of Citizenship |

| Social Security Number ████████ | Home Phone (incl. area code) (408) 251-9031 | DOB (mm/dd/yyyy) 07/05/1948 | Yrs. School 14 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |

| [ ] Married [X] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Co-Borrower) no. 0 ages | | [ ] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Borrower) no. ages |

| Present Address (street, city, state, ZIP) [X] Own [ ] Rent 007 No. Yrs. 4040 HIDDEN VALLEY LANE SAN JOSE , CA 95127 | Present Address (street, city, state, ZIP) [ ] Own [ ] Rent No. Yrs. |

| Mailing Address, if different from Present Address 4040 HIDDEN VALLEY LANE SAN JOSE , CA 95127 | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) [ ] Own [ ] Rent 000 No. Yrs. | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent No. Yrs. |

### IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
| Name & Address of Employer FERRIS HOIS REPAIR 308 SANGO CT MILPITAS , CA 95035 | [ ] Self Employed | Yrs. on this job 17YR , 11MO Yrs. employed in this line of work/profession 17 | Name & Address of Employer | [ ] Self Employed | Yrs. on this job Yrs. employed in this line of work/profession |

| Position/Title/Type of Business MANAGER / ACCOUNTING | Business Phone (incl. area code) (408) 263-1720 | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | [ ] Self Employed | Dates (from – to) | Name & Address of Employer | [ ] Self Employed | Dates (from – to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer | [ ] Self Employed | Dates (from – to) | Name & Address of Employer | [ ] Self Employed | Dates (from – to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 12,000 | $ | $ 12,000 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 2,870 | $ 3,966 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 56 | 56 |
| Dividends/Interest | | | | Real Estate Taxes | 500 | 633 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 12,000 | $ | $ 12,000 | Total | $ 3,428 | $ 4,658 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the
Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description | | LIABILITIES | | |
| Cash deposit toward purchase held by: | $ | | | |
| | | Name and address of Company   BK OF AMER | $ Payment/Months | $ |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| BANK OF AMERICA | 10,000 | | 343/ 56 | 19,132 * |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company   CHASE | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| WOLD SAVINGS (MM) | 15,000 | | 309/ 50 | 15,493 * |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company   CHASE | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| WASHINGTON MUTUA (MM) | 65,000 | | 455/ 28 | 12,778 * |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company   CHASE | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | | 211/ 50 | 10,563 |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company   BK OF AMER | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | | 210/ 47 | 9,939 |
| | | Acct. no. | | |
| | | Name and address of Company   CHASE | $ Payment/Months | $ |
| Life insurance net cash value | $ | | 229/ 39 | 8,943 |
| Face amount $ | | Acct. no. | | |
| Subtotal Liquid Assets | $ 90,000 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 3,195,000 | Acct. no. | | |
| | | Name and address of Company   SEE ATTACHED | $ Payment/Months   11,221 | $ 1,871,021 |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| | | Acct. no. | | |
| Automobiles owned (make and year)   2006 CHEVROLET | $ 20,000 | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ / | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 12,878 | |
| Total Assets a. | $ 3,305,000 | Net Worth (a minus b) ► $ 1,887,131 | Total Liabilities b. | $ 1,417,869 |

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| WORLD S&L 2664 TRIMBLE | | 650000 | 510562 | 2500 | 2180 | 142 | 178 |
| WORLD S&L 3805 WEDEKIND | | 395000 | 266177 | 2000 | 1136 | 242 | 623 |
| M&T MORTGAGE 802 & 810 SECOND STREET | | 500000 | 170000 | 5000 | 2100 | 1 | 2899 |
| | GRAND Totals | 3195000 | 1867905 | 13500 | 11186 | 814 | 4372 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

Alternate Name _____ Creditor Name _____ Account Number _____

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | .00 |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 578373.00 |
| e. Estimated prepaid items | 5760.07 |
| f. Estimated closing costs | 3425.80 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | 7235.20 |
| i. Total costs (add items a through h) | 594794.07 |
| j. Subordinate financing | .00 |
| k. Borrower's closing costs paid by Seller | .00 |
| l. Other Credits (explain) BORR UPFRONT DOLLARS | 400.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 680000.00 |
| n. PMI, MIP, Funding Fee financed | .00 |
| o. Loan amount (add m & n) | 680000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 86605.93- |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 10 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 10 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | | X | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X _____ | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino   ☒ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☒ White | Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White |
| Sex: | ☒ Female   ☐ Male | Sex: | ☐ Female   ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | | Name and Address of Interviewer's Employer |
|---|---|---|---|
| This application was taken by: | MARY ROMERO | 12/19/06 | FLS-700-03-19 |
| ☐ Face-to-face interview | Interviewer's Signature | Date | BANK OF AMERICA, N.A. |
| ☐ Mail | | | P.O. BOX 45140 |
| ☒ Telephone | Interviewer's Phone Number (incl. area code) | | JACKSONVILLE, FL 322325140 |
| ☐ Internet | (408) 369-2813 | | |

Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: ROSIE LUCIW | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: B111261225 |

VERIFIED RESIDENTIAL LOAN APPLICATION
ADDENDUM

BORROWER ONE - LIABILITIES

------------------------------REAL ESTATE LOANS------------------------------

| ADDRESS OF PROPERTY | MONTHLY PAYMENT | UNPAID BALANCE | TO BE PAID |
|---|---|---|---|
| 2864 TRIMBLE | 2180 | 510562 | |
| 3805 WEDEKIND | 1135 | 266177 | |
| 802 & 810 SECOND STREET | 2100 | 170000 | |
| 4040 HIDDEN VALLEY LANE | 2135 | 292673 | |
| 4040 HIDDEN VALLEY LANE | 765 | 98293 | |
| 4045 HIDDEN VALLEY LANE | 2870 | 530000 | |

****************************************************************************

CALIFORNIA APPLICANTS ONLY: MARRIED APPLICANTS ARE HEREBY NOTIFIED THAT THEY ARE
ENTITLED TO APPLY FOR A SEPARATE ACCOUNT.

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X _Rosie Luciw_ | | X | |

CONTINUATION OF

BS21N (0507)

NGIS 01/12/01 8:49 A: 6111261225          Page 4 of 4

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:  ROSIE LUCIW | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: 6111261225 |

```
        VERIFIED RESIDENTIAL LOAN APPLICATION
                    ADDENDUM
              BORROWER ONE - ASSETS
**********************************************************************
    SOURCE OF                            MONTHLY
    OTHER INCOME                         PAYMENT
                        :
                    CASH OR MARKET VALUE
```

CALIFORNIA APPLICANTS ONLY: MARRIED APPLICANTS ARE HEREBY NOTIFIED THAT THEY ARE
ENTITLED TO APPLY FOR A SEPARATE ACCOUNT.

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X  *Rosie Luciw* | | X | |

BS2.1N (05/07)                    Page 4 of 4

HS IS  01/12/07  8:46 AM  6111261225

## STATEMENT OF ASSETS AND LIABILITIES
(Supplement to Residential Loan Application)

Name
ROSIE LUCIW

The following information is provided to complete and become a part of the application for a mortgage in the amount of $  680,000.00
with interest at  7.000  % for a term of  360  months and is to be secured by property known as:
Subject Property Address (street, city, state, & ZIP)  4045 HIDDEN VALLEY LANE
SAN JOSE, CA  95127
Legal Description of Subject Property (attach description if necessary)

APN: 612-22-063

### ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ]  Jointly [X]  Not Jointly [ ]

| ASSETS Description Cash deposit toward purchase held by: | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| | $ | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| List checking and savings accounts below | | Name and address of Company THD / CBSD | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | 20 / 107 | 2,134 |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company HSBC NV | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | 15 / 65 | 976 * |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company CHASE ADVG | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | 1 / 12 | 12 |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | / | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | | / | |
| | | Acct. no. | | |
| Life insurance net cash value | $ | Name and address of Company | $ Payment/Months | $ |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | | / | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | / | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ / | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $ | Net Worth (a minus b) ► $ | Total Liabilities b. | $ |

BS21L (0507)    VMP Mortgage Solutions, Inc. (800)521-7291    Initials _____
H4 13  01/12/07  9:49 AM  6111261225

## ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| BK OF AMER 4040 HIDDEN VALLEY LANE | | 800000 | 292673 | 4000 | 2135 | 428 | 1437 |
| BK OF AMER 4040 HIDDEN VALLEY LANE | | | 98293 | 1 | 765 | 1 | (765) |
| SERRIA PACIFIC SOLD TO COUNT 4045 HIDDEN VALLEY LANE | | 850000 | 530000 | | 2870 | | |
| | GRAND Totals | 3105000 | 1867905 | 13501 | 11185 | 814 | 4372 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

## ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X *Rosa Lucia* | | X | |

## TO BE COMPLETED BY INTERVIEWER

| | Interviewer's Name (print or type) | | Name and Address of Interviewer's Employer |
|---|---|---|---|
| This application was taken by: | MARY ROMERO | | FL9-700-03-19 |
| ☐ Face-to-face interview | Interviewer's Signature | 12/19/06 Date | BANK OF AMERICA, N.A. |
| ☐ Mail | | | P.O. BOX 45140 |
| ☒ Telephone | Interviewer's Phone Number (incl. area code) | | |
| ☐ Internet | (406) 369-2813 | | JACKSONVILLE, FL 322325140 |